IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

SHERRILL FORD-TORRES,                          Civil No. 06-914-AA
                                               OPINION AND ORDER
          Plaintiff,

     vs.


CASCADE VALLEY TELECOM, INC., an Oregon
corporation; JADENT, INC., an Oregon
corporation; ROBERT O'SHEA; DENNIS O'SHEA;
TOM O'SHEA; and N.W. CASCADE MARKETING INC.,
an Oregon corporation,

          Defendants.
_____

Kevin T. Lafky
Larry L. Linder
Lafky and Lafky
429 Court Street NE
Salem, OR 97301
     Attorneys for Plaintiff

David J. Sweeney
Paul G. Doods
Brownstein, Rask, Sweeney, Kerr,
   Grim, DeSylvia & Hay, LLP
1200 S.W. Main Street
Portland, OR 97205

Page 1 - OPINION AND ORDER

    Attorneys for Defendants Jadent, Inc.,
    Dennis O'Shea and Tom O'Shea

AIKEN, Judge:

    Pending before the court are Jadent, Dennis and Tom's
("defendants") two motions for summary judgment.  Defendants
Robert, Cascade, and N.W. Cascade have neither moved for summary
judgment nor joined defendants' pending motions.  On February 7,
2008, the court held telephone oral argument on these motions.
Defendants' motions are granted.

    In this action, plaintiff Sherrill Ford-Torres filed several
claims under federal and state law against her former employers,
Cascade Valley Telecom, Inc. ("Cascade"), and Robert O'Shea
("Robert"); her alleged employers Jadent, Inc. ("Jadent"); Dennis
O'Shea ("Dennis"), the president of Jadent; Thomas O'Shea
("Tom"), the secretary of Jadent; as well as N.W. Cascade
Marketing, Inc. ("N.W. Cascade").  Plaintiff's claims include sex
discrimination, retaliation, hostile work environment, wage claim
discrimination, wrongful discharge, reckless and intentional
infliction of emotional distress, intentional injury of employee
by employer, willful and unprovoked aggression, battery, and
violations of Oregon's Fraudulent Transfers and Conveyances Act.

    The first motion asserts defendants are entitled to judgment
as a matter of law on the following claims: plaintiff's state
employment discrimination claim pursuant to ORS 659A.030(1)

(claim 1); employment discrimination wage claim pursuant to ORS 652.355 (claim 2); common law wrongful discharge (claim 3); reckless and intentional infliction of emotional distress (claims 4 and 5 respectively); intentional injury of employee by employer (claim 6); willful and unprovoked aggression (claim 7); battery (claim 8); and a federal employment discrimination claim pursuant to Title VII, 42 U.S.C. § 2000e (claim 9). Defendants' second summary judgment motion asserts defendants are entitled to judgment as a matter of law on plaintiff's Uniform Fraudulent Transfer Act ("UFTA") claim. Plaintiff concedes claims six, seven, and eight against defendants. For the reasons set forth below, defendants' motions for summary judgment on all remaining claims are GRANTED and defendants Jadent, Dennis, and Tom are dismissed from this lawsuit.

<u>BACKGROUND</u>

On May 17, 2002, defendant Robert formed defendant Cascade. In 2003, Cascade entered into a contract with defendant Jadent for which Cascade provided telemarketing services for Jadent. Cascade and Jadent were separate entities that were separately registered with the State of Oregon. Plaintiff began working for Cascade on August 4, 2003 as a telephone operator. On plaintiff's employment application, Cascade was named as the employer. Throughout the course of plaintiff's employment with Cascade, Cascade prepared its payroll and paid the plaintiff.

Defendants never paid plaintiff nor did plaintiff receive W-2 forms from defendants or list defendants as an employer on her tax returns.

Nevertheless, plaintiff alleges that she had been told by Robert's step-daughter and other Cascade employees that she was working for Jadent and that all employee and customer complaints should be directed towards defendants Jadent, Dennis, or Tom. Further, plaintiff alleges that throughout her employment, Robert made sexual jokes at work, performed unwanted sex-related acts, and caused unwanted physical contact with the plaintiff.

On April 22, 2004, plaintiff alleges that Cascade and Robert did not pay her and other employees at the end of the pay period. On April 27, 2004, plaintiff still had not been paid by Robert, therefore, plaintiff and others decided to stop working until they received their paychecks. Thereafter, the plaintiff contacted Tom, Robert's brother, to inform him that she and others had not been paid. Tom told the plaintiff that she would be paid at 12:30 p.m. that day.

On April 27, 2004, plaintiff arrived at work to receive her paycheck. When Robert got to the office, he began yelling at the employees, including plaintiff, for walking out. Plaintiff was then given her final paycheck and terminated. During plaintiff's employment with Cascade, Robert was not an employee of Jadent and had not been involved in the ownership, management or operation

of Jadent.  Furthermore, Dennis and Tom were not employees of
Cascade, and were not involved in the ownership, management or
operation of Cascade.

On July 14, 2006, the State of Oregon administratively
dissolved Cascade.  Robert told Dennis, Robert's and Tom's
brother, that he was terminating the Jadent/Cascade agreement
because he was dissolving Cascade and starting a new company.  On
December 18, 2006, Robert incorporated defendant N.W. Cascade
Marketing, Inc. ("N.W. Cascade").  Thereafter, on or about
January 3, 2007, Jadent entered into a contract with N.W.
Cascade, whereby N.W. Cascade agreed to provide certain
telemarketing services for Jadent.  This contract was essentially
the same contractual arrangement that Jadent had with Cascade
before Cascade was administratively dissolved. N.W. Cascade
received income as a result of this contract.

                        STANDARDS

Summary judgment is appropriate "if the pleadings,
depositions, answers to interrogatories, and admissions on file,
together with the affidavits, if any, show that there is no
genuine issue as to any material fact and that the moving party
is entitled to a judgment as a matter of law." Fed. R. Civ. P.
56(c).  Substantive law on an issue determines the materiality of
a fact.  T.W. Electrical Service, Inc. v. Pacific Electrical
Contractors Assoc., 809 F.2d 626, 630 (9th Cir. 1987).  Whether

Page 5 - OPINION AND ORDER

the evidence is such that a reasonable jury could return a
verdict for the nonmoving party determines the authenticity of a
dispute.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248
(1986).

The moving party has the burden of establishing the absence
of a genuine issue of material fact.  Celotex Corp. v. Catrett,
477 U.S. 317, 323 (1986).  If the moving party shows the absence
of a genuine issue of material fact, the nonmoving party must go
beyond the pleadings and identify facts which show a genuine
issue for trial.  Id. at 324.

Special rules of construction apply when evaluating summary
judgment motions: (1) all reasonable doubts as to the existence
of genuine issues of material fact should be resolved against the
moving party; and (2) all inferences to be drawn from the
underlying facts must be viewed in the light most favorable to
the nonmoving party.  T.W. Electrical, 809 F.2d at 630.

DISCUSSION

A. Employment Discrimination Claims

Plaintiff's discrimination claims (claims one and nine)
pursuant to Title VII, 42 U.S.C. § 2000e, and ORS § 659A.030 are
subject to the same legal standards.  Haskins v. Owens-Corning
Fiberglass Corp., 811 F. Supp. 534, 537 (D. Or. 1992).  Moreover,
facts sufficient to give rise to one claim are sufficient to give
rise to all.  Haskins, 811 F. Supp. at 537.

Defendants move for summary judgment arguing that plaintiff's claims are premised on the existence of an employment relationship between plaintiff and defendants which does not exist.  Defendants assert that there is no genuine issue of material fact that Cascade, not Jadent, was plaintiff's employer.

Plaintiff alleges that all defendants violated ORS 659A.030(1)(a) and (b) by discriminating against plaintiff on the basis of gender, and ORS 659A.030(1)(f) by retaliating against plaintiff for her sex discrimination complaint.  ORS 659.030(1) prohibits employers from discriminating and retaliating on the basis of "race, religion, color, sex, national origin, marital status and or age."  Plaintiff's second claim for relief alleges a violation of ORS 652.355 which prohibits employers from discriminating because of a wage claim made by the employee.

For purposes of ORS § 659, an "employer" is defined as "any person who in this state, directly or through an agent, engages or uses the personal service of one or more employees, reserving the right to control the means by which such service is or will be performed."  ORS 659.001(4).  Similarly, for purposes of ORS § 652, an "employer" is defined as "any person who in this state, directly or through an agent, engages personal services of one or more employees." ORS 652.310(2).  Oregon courts also use the "right of control" test when evaluating whether a person is an employer under ORS § 652.  Perri v. Certified Language Int'l,

LLC, 187 Or. App. 76, 82, 66 P.3d 531 (2003).

Four factors are used to evaluate whether an employer has the right to control an individual: "(1) direct evidence of the right to, or the exercise of, control; (2) the method of payment; (3) the furnishing of equipment; and (4) the right to fire." Cantua v. Creager, 169 Or. App. 81, 92, 7 P.3d 693 (2000) (internal citations omitted).

There is no direct evidence that defendants used the services of the plaintiff. Further, there is no genuine issue of material fact that defendants ever controlled plaintiff, paid plaintiff, furnished equipment to plaintiff, or had the right to fire plaintiff. Plaintiff admits that she does not have any evidence that defendants ever controlled the work that she did. Plaintiff also admits that only Cascade ever paid her and further admits that she did not receive W-2 forms from Jadent.

Plaintiff relies on a conversation she had with Tom regarding her concern about being fired for complaining about Cascade's failure to pay her wages. Plaintiff alleges that Tom told her that she need not worry about getting fired "because she would not lose her job" and that she would eventually be paid. Plaintiff's Response to Defendant Jadent Inc.'s Motion for Summary Judgment, p. 6, 7. Plaintiff argues that Tom told her and other Cascade employees that if they ever had any problems they could contact him. Nonetheless, plaintiff was terminated.

It is undisputed that, although Tom may have made such statements, he did not actually fire plaintiff, nor did he have authority to take such action.

Plaintiff also argues that Jadent should be considered an employer because all complaints that came in about Cascade's telemarketers went to Jadent's toll-free telephone number. Even if true, there is no genuine issue of material fact that defendants controlled Cascade's employees, including plaintiff, through such a service.

Plaintiff also contends that when Robert left Jadent, Jadent invested between $35,000 and $40,000 directly into Cascade rather than giving it to Robert personally. See Pl's Resp. to Concise Stmt. of Facts, p. 2, ¶ 3; Pl's Memo in Support, p. 5. As such, plaintiff seems to contend that Jadent had some control over Robert because of this investment into Cascade. Defendants argue that Jadent paid Robert this money as a severance package. See Defs' Reply Memo, p. 21-24. Specifically, defendants assert that Jadent paid this money into Cascade's account, pursuant to Robert's request, so Robert would avoid paying taxes if he had to take the money out of his pension and put it into Cascade.

Dennis and Robert both testified in their depositions that this payment was deemed a severance package. See Declar. Dave Sweeney, Ex. A (Dennis O'Shea Depo., pp. 76-77); Ex. B (Robert O'Shea Depo., pp. 35-36, 54-55). Plaintiff also points to this

Page 9 - OPINION AND ORDER

as the "highest severance Jadent ever paid to an employee."  <u>See</u>
Pl's Memo in Opposition, p. 3.  Defendants do not dispute this.
It is unclear how defendants' payment to Robert, regardless of
its title, serves as control over Cascade employees, including
plaintiff.  Again, I find no genuine issue of material fact that
defendants controlled Cascade employees, including plaintiff,
through Jadent's contract with Cascade.

Plaintiff also relies on "indirect-employer" and "joint
employer" theories to support plaintiff's motions that defendants
should be held liable for her employment discrimination claims.
The "indirect employer" theory is not recognized by Oregon state
law within the context of employment discrimination claims.  The
test for "indirect employer" liability within the context of
Employers Liability Law claims is inapplicable in this case.
<u>Boothby v. D.R. Johnson Lumber Co.</u>, 184 Or. App. 138, 143-44, 55
P.3d 1113 (2002) (indirect employer liability is triggered if any
of three conditions is satisfied: (1) plaintiff's direct employer
and defendant are engaged in a "common enterprise"; (2) defendant
retained the right to control the manner or method in which the
risk-producing activity was performed; or (3) defendant actually
controlled the manner or method in which the risk-producing
activity was performed).

Under federal law, to be liable as an indirect employer, the
alleged employer must be "the entity performing the

Page 10 - OPINION AND ORDER

discriminatory act," or no action will lie.  <u>Anderson v. Pacific</u>
<u>Maritime Ass'n</u>, 336 F.3d 924, 931 (9th Cir. 2003).  Plaintiff
alleges that Jadent exercised control over plaintiff and other
Cascade employees because Jadent's principal, Tom, told plaintiff
that he "could effect the terms and conditions of her employment,
and had authority to hire and fire."  Plaintiff's Response to
Defendant Jadent Inc.'s Motion for Summary Judgment, p. 10.
However, without pointing to evidence of a discriminatory action
on defendants' part, allegations of control do not suffice to
state a claim under the indirect employer liability theory
pursuant to Title VII, 42 U.S.C. § 2000e, and ORS § 659A.030.

   Plaintiff next alleges defendants' liability based on the
theory of "joint employer" theory.  Again, the "joint employer"
theory is not recognized by Oregon state law within the context
of employment discrimination claims.  "Indirect employer"
liability has been examined within the context of workers'
compensation claims, which examines whether an employee is
jointly employed:

> Joint employment occurs when a single employee, under
> contract with two employers, and under the simultaneous
> control of both, simultaneously performs services for both
> employers, and when the service for each employer is the
> same as, or is closely related to, that for the other. In
> such a case, both employers are liable for workmen's
> compensation.

<u>Liberty Northwest Insurance Corp. v. McDonald</u>, 187 Or. App. 40,
44, 66 P.3d 528 (2003) (citing 1C Larson, <u>Workmen's Compensation</u>

<u>Law</u>, 48.40 (1982)).

Plaintiff alleges she was providing services for Jadent under the specified contract between Jadent and Cascade. Plaintiff's Response to Defendant Jadent Inc.'s Motion for Summary Judgment, p. 10-11. However, this was a contractual arrangement and not an employer-employee relationship between plaintiff and defendants. Furthermore, plaintiff concedes that she was not under contract with Cascade and Jadent simultaneously.

Under federal law, courts have looked at various factors to determine whether an alleged employer had sufficient control over an employee to be held liable under a "joint employer" theory. For instance, the court in <u>Morgan v. Safeway Stores, Inc.</u> evaluated the following factors in determining whether two businesses should be treated as a single employer for Title VII purposes: (1) interrelated operations, (2) common management, (3) centralized control of labor relations, and (4) common ownership or financial control. 884 F.2d 1211, 1213 (9th Cir. 1989) (citing <u>Childs v. Local 18, Int'l Brotherhood of Electrical Workers</u>, 719 F.2d 139, 1382 (9th Cir. 1983)).

In addition, guidelines have been developed to determine joint employee status applicable to the Fair Labor Standards Act (FLSA), 29 U.S.C. §§ 201-210, and the Migrant and Seasonal Agricultural Worker Protection Act (AWPA), 29 U.S.C. §§ 1801-

1872.  See Moreau v. Air France, 356 F.3d 942, 946-48 (9th Cir.

2003); Torres-Lopez v. May, 111 F.3d 633, 639 (9th Cir. 1997);

Bonnette v. Cal. Health & Welfare Agency, 704 F.2d 1465, 1470

(9th Cir. 1983).  In Bonnette, the court focused on "whether the

alleged employer (1) had the power to hire and fire employees,

(2) supervised and controlled employee work schedules or

conditions of payment, (3) determined the rate and method of

payment, and (4) maintained employment records." 704 F.2d at

1470.  In Torres-Lopez, the court considered similar factors:

"(1) the nature and degree of control of the workers; (2) the

degree of supervision, direct or indirect, of the work; (3) the

power to determine the pay rates or the methods of payment of the

workers; (4) the right, directly or indirectly, to hire, fire, or

modify the employment conditions of the workers; and (5) the

preparation of payroll and the payment of wages."  111 F.3d at

639-40 (citing 29 C.F.R. § 500.20(h)(4)(ii)).

Plaintiff alleges that defendants "maintained control over

the contract" that Jadent had with Cascade.  Plaintiff's Response

to Defendant Jadent Inc.'s Motion for Summary Judgment, p. 10.

Further, plaintiff alleges that Tom "held himself out as being

someone that had the right to guarantee that Plaintiff get paid

for services provided and to hire and fire."  Id. at 11.

However, these facts fail to raise a genuine issue of material

fact as to whether defendants exerted the requisite degree of

control over plaintiff rendering them jointly liable for Robert's allegedly discriminatory actions.  Pursuant to the guidelines, there is no evidence that defendants supervised or controlled plaintiff's work, had the power to hire or fire plaintiff, had the power to determine the pay rate for plaintiff, or paid plaintiff directly.  Further, there is no evidence that Cascade and Jadent had interrelated operations, common management, a centralized control of labor relations, or common ownership and financial control.

Since I find that defendants were not plaintiff's employers, plaintiff's state and federal employment discrimination claims (one, two, and nine) fail.

Therefore, defendants' motion for summary as to plaintiff's employment discrimination claims is GRANTED.

B. Wrongful Discharge Claim

Plaintiff's third claim for relief alleges a common law wrongful discharge claim.  Under Oregon law, an employee may discharge an employee at any time for any reason unless doing so violates a contractual, statutory, or constitutional requirement. Simpson v. W. Graphics Corp., 293 Or. 96, 99, 643 P.2d 1276 (1982).  The tort of wrongful discharge is a narrow exception to this general rule.  Sheets v. Knight, 308 Or. 220, 230-31, 779 P.2d 1000 (1989), abrogated on other grounds by McGanty v. Staudenraus, 321 Or. 532, 901 P.2d 841 (1995).  Wrongful

discharge is recognized in two circumstances: (1) discharge for
exercising a job-related right if important public interest is
involved such as resisting sexual harassment; and (2) discharge
for complying with a public duty, such as serving on jury duty.
Holien v. Sears, Roebuck & Co., 298 Or. 76, 90, 689 P.2d 1292
(1984).

Although there might be some genuine issue of material fact
that plaintiff can establish a causal connection between her
discharge and her engagement in a protected act (complaining of
gender discrimination), the viability of her claim turns on
whether defendants had the right to control plaintiff.  The
"right-of control test", described supra, is the common-law test
used to determine whether defendant is an employer and thus
subject to a wrongful discharge claim.  Cantua, 169 Or. App. at
91. As determined previously, I found no genuine issue of
material fact that defendants "controlled" plaintiff as applied
under the 'right of control' test.

As such, defendants' motion for summary as to plaintiff's
wrongful discharge claim is GRANTED.

C. State Law Tort Claims

Jadent moves for summary judgment on plaintiff's fourth and
fifth state law claims for reckless and intentional infliction of
emotional distress.  Defendants argue again that these actions
are premised on the actions of Robert and Cascade, plaintiff's

employer, not Jadent.  Under the doctrine of *respondeat superior*,
an employer is liable for an employee's tort when the employee
acts within the course and scope of employment.  <u>Chester v.
Barmon</u>, 305 Or. 439, 442, 75 P.2d 404 (1988).  To establish that
an employee's act was within the employee's scope of employment,
a party must satisfy three requirements:

> (1) the conduct must have occurred substantially within the
> time and space limits authorized by the employment; (2) the
> employee must have been motivated, at least partially, by a
> purpose to serve the employer; and (3) the act must have
> been of a kind that the employee was hired to perform.

<u>Coney v. Fagan</u>, 195 Or. App. 282, 286-87, 97 P.3d 1252 (2004)
(internal citations omitted).

    If a factual issue exists as to whether an employee was
acting within the time and space limits authorized by the
employment, we turn then to the remaining elements to determine
whether the allegedly tortious conduct by the employee "was
sufficiently connected to the employer's purpose to support the
employer's vicariously liability." <u>Minnis v. Oregon Mutual Ins.
Co.</u>, 334 Or. 191, 206, 48 P.3d 137 (2002).

    The conduct underlying the alleged tortious acts includes
both Robert's sexual harassment and his derogatory comments
during the course of plaintiff's work day.  As to the first
element, plaintiff has raised a genuine issue of material fact.
Plaintiff alleged that Robert made sexual jokes at work on a
daily basis and slapped plaintiff on the back of the head hard

Page 16 - OPINION AND ORDER

enough to cause physical pain.  However, regarding the second element, I do not find that "the employee engaged in conduct that was intended to serve the employer and that conduct resulted in the acts that injured the plaintiff." Vinsonhaler v. Quantum Residential Corp., 189 Or. App. 1, 6, 73 P.3d 93 (2003). Vinsonhaler holds that an employer is not vicariously liable for a former employee's tortious acts if a  plaintiff does not present any evidence that the former employer cultivated a relationship of trust that facilitated the tortious acts or that he had engaged in conduct of any sort that was intended to serve the defendant employer and that conduct resulted in sexual harassment.  Id.

Here, plaintiff has failed to present evidence that Robert's alleged tortious acts were intended to serve defendants.  The only relationship Jadent had to Cascade and Robert was contractual. Robert's actions were not intended to serve the defendants for purposes of an employee-employer relationship.

As such, defendants are not vicariously liable on these state law claims, and its motion for summary judgment on these claims is GRANTED.

## D. Uniform Fraudulent Transfer Act ("UFTA") Claim

Defendants move for summary judgment against plaintiff's tenth claim under the UFTA.  Plaintiff alleges that defendants violated Oregon's UFTA pursuant to ORS 95.230(1)(a),

95.230(1)(b), 95.240(1),(2).  Plaintiff alleges that Jadent
transferred the telemarketing services contract from Cascade to
N.W. Cascade with the intent to defraud a creditor, namely the
plaintiff.  Plaintiff alleges that Jadent, Cascade, N.W. Cascade,
Dennis and Tom believed or reasonably should have believed that
Cascade and Robert would incur debts beyond their ability to pay
the debts as they became due; the transfer of the contract would
render Cascade and Robert insolvent; they made the transfer
without receiving a present, reasonably equivalent value; and
they had reasonable cause to believe that Robert and Cascade were
insolvent at the time of the transfers.

Plaintiff requests judgment against defendants for the value
of plaintiff's claims against Robert, Jadent and Cascade; a
constructive trust against the contract between Jadent and N.W.
Cascade for the value of plaintiff's claims against Robert,
Jadent and Cascade; an injunction prohibiting further assignment
of the contract between Jadent and N.W. Cascade; and any other
relief the Court may deem equitable and just.

Plaintiff's UFTA claim contains four counts, each of which
is brought under a different subsection of the UFTA.  Plaintiff
alleges defendants violated ORS 95.230(1)(a), 95.230(1)(b),
95.240(1) and 95.240(2).

ORS 95.230(1)(a) provides:

A transfer made or obligation incurred by a debtor is
fraudulent as to a creditor, whether the creditor's claim

arose before or after the transfer was made or the
obligation was incurred, if the debtor made the transfer or
incurred the obligation

    (a) With actual intent to hinder, delay, or defraud any
        creditor of the debtor

The Oregon Court of Appeals states that "ORS 95.230(1)(a)
clearly calls for a case-by-case factual determination of whether
a transfer was made with the actual intent to hinder, dely, or
defraud." Morris v. Nance, 132 Or. App. 216, 221, 888 P.2d 571
(1994). For liability to exist, pursuant to ORS 95.230(1)(a),
the plaintiff must prove that a transfer occurred, the defendant
is a "debtor" of the plaintiff, and the "debtor" intended to
defraud the plaintiff as a creditor of the defendant.

ORS 95.200(12) defines a transfer as "every mode, direct or
indirect, absolute or conditional, voluntary or involuntary, of
disposing of or parting with an asset, and includes a payment of
money, a release, a lease and the creation of a lien or
encumbrance." Plaintiff argues that the definition of a
"transfer" should be read broadly. See Greeninger v. Cromwell,
140 Or. App. 241, 246, 915 P.2d 479 (1996). Greeninger holds
that assets transferred through the use of a marriage dissolution
proceeding is sufficient to be considered a fraudulent transfer
under the UFTA. 140 Or. App. at 246-47.

"Asset" is defined as:

property of a debtor but does not include:

  (a) Property to the extent that it is encumbered by a valid

Page 19 - OPINION AND ORDER

```
                    lien;
    (b)  Property to the extent that it is generally exempt
         under nonbankruptcy law; or
    (c)  An interest in property held in tenancy by the entirety
         to the extent that it is not subject to process by a
         creditor holding a claim against only one tenant.
```

ORS 95.200(12).

Courts have assessed whether certain pieces of property were considered assets as well as whether the debtor fraudulently transferred such assets. See, e.g., Preferred Funding, Inc. v. Jackson, 185 Or. App. 693, 698, 61 P.3d 939 (2003) (property encumbered by a valid lien is not considered an asset, as articulated in ORS 95.200(2)(a), and thus, was not fraudulently transferred); Doughty v. Birkholtz, 156 Or. App. 89, 98, 964 P.2d 1108 (1998) (real property subject to a mortgage is an asset that was fraudulently transferred because the mortgage was not supported by adequate consideration); In re Stein, 208 B.R. 209, 216 (Bankr. D. Or. 1997) (stock transferred to the defendant for future legal services was fraudulently transferred since it was not given with "reasonably equivalent value in exchange for the transfer" pursuant to ORS 95.230(1)(b) and 95.240(1)).

Plaintiff alleges that defendants transferred the telemarketing services contract from Cascade to N.W. Cascade with the actual intent to defraud the plaintiff as a creditor of Jadent. Defendants argue that Jadent did not transfer that contract right to any person or entity. The evidence supports defendants' contention that Cascade and Jadent mutually

Page 20 - OPINION AND ORDER

terminated the contract between themselves and then formed a new contract between Jadent and N.W. Cascade.  I agree that neither Jadent, nor Cascade, assigned its contract rights, the asset in question, to N.W. Cascade.  See <u>AutoLend, IAP, Inc. v. Auto Depot, Inc.</u>, 170 Or. App. 135, 142, 11 P.3d 693 (2000) ("[a]n assignee occupies the same legal position under the contract as does an original contracting party").

Moreover, the right to receive performance under the Cascade contract belonged to Jadent, not to Dennis and Tom, and thus precludes individual liability.  Dennis and Tom were not debtors or transferees of an asset transferred and therefore are not liable.  See <u>Cadle Co. II v. Schellman</u>, 126 Or. App. 372, 379, 868 P.2d 773 (1994) (court had no authority under ORS 95.260 or ORS 95.270 to award a personal judgment against the defendant for the value of the houseboat since defendant was not the debtor or transferee).

The right of performance to the contract, the only asset in question, was not transferred from Cascade, the debtor, to N.W. Cascade. The contract between Jadent and Cascade had been terminated. Even though Jadent entered into a new contract with N.W. Cascade that essentially performed the same services as Cascade performed in the original contract, there was no asset transferred, as defined and applied pursuant to the UFTA, between Cascade and Jadent nor between Jadent and N.W. Cascade. Since a

transfer was never made, I do not address the other elements in
ORS 95.230(1)(a).  Furthermore, plaintiff's claims that the
defendant violated ORS 95.230(1)(b), 95.240(1), and 95.240(2)
fail since a transfer was not made, a required element under each
statutory provision.

As discussed previously , plaintiff asserts that when Robert
left Jadent, Jadent invested between $35,000 and $40,000 directly
into Cascade rather than giving it to Robert personally.  See
doc. 117, p. 2, ¶ 3; doc. 121, p. 5.  Alternative to the
"control" issue, plaintiff also seems to contend that Jadent
should be liable to plaintiff for transferring an asset, an
investment of money paid directly to Cascade, for purposes of
defrauding plaintiff.  I disagree.  Even if true, this "transfer"
is not the transfer at issue that plaintiff contends is
fraudulent.  Plaintiff previously asserts that Jadent
fraudulently transferred its contract from Cascade to N.W.
Cascade.  Moreover, Jadent is not the "debtor" pursuant to UFTA.

Although I am to interpret the facts presented in the light
most favorable to the nonmoving party, I find no genuine issue of
material fact as to whether Jadent fraudulently transferred an
asset from Cascade to N.W. Cascade for purposes of defrauding the
plaintiff.  Moreover, I find no genuine issue of material fact as
to whether Jadent's new contract with N.W. Cascade was an asset
as defined under the UFTA.

Page 22 - OPINION AND ORDER

Therefore, defendants are not vicariously liable on this UFTA state law claim, and its motion for summary judgment on this claim is GRANTED.

<u>CONCLUSION</u>

Defendants' motions for summary judgment (docs. 41, 100, 101 and 102) are GRANTED.

IT IS SO ORDERED.

Dated this  26  day of February 2008.


_____/s/ Ann Aiken_____
Ann Aiken
United States District Judge